HEARD APRIL TERM, 1873.

## NETTLES · *vs.* McCOWN.

An administrator deposited in bank, in March, 1860, $442.20 in bank bills, which he held for a distributee, and allowed them to remain on deposit until 1863, when he took them into his own possession, and having made use of some, retained $200 thereof until his death, in 1868, when they were sold by his administratrix at 27 cents on the dollar: *Held,* That his estate was liable for the $442.20, with interest from March, 1860, and the fact that the fund was claimed by an assignee of the distributee, and that no demand was made for the money until 1867, was not sufficient, with the other circumstances, to excuse the estate from the payment of interest.

BEFORE RUTLAND, J., AT DARLINGTON, OCTOBER TERM, 1871.

The case is stated in the following brief prepared for this Court:

This was a bill of revivor, filed April 15th, 1869, by Samuel J. Nettles, trustee, against Harriet B. McCown, administratrix (with the will annexed) of James McCown, setting forth the filing of an original bill against her said testator, in which it was stated that, on the 2d January, 1855, a post-nuptial settlement of certain negroes was made by John F. DeLorme to Isaac D. Wilson, trustee, for the benefit of Adeline O. DeLorme (wife of John F.) and her children ; that, on the 28th February, 1860, the said John F. and Adeline O., executed a deed of assignment, conveying to

the said Isaac D. Wilson all the right and interest of Adeline O. in certain negro property, then recently recovered, under a proceeding of *John D. Pritchett et al.* vs. *Robert Harllee et al.*, and other property named, in trust; that said Wilson should appropriate sufficient of the funds arising from said property to replace the value of a slave, contained in the first deed, sold by them without the knowledge of Wilson, to hold the same, and the residue, subject to like trusts created in the first deed; that James McCown was administrator of Robert Nettles, deceased, grandfather of Adeline O. DeLorme, who was a distributee of the property recovered by said suit, and from whom the interest of Adeline O. was derived; that, as administrator, said James McCown had received large sums of money, in which said Adeline O. was interested; that, on the 4th day of August, 1866, Samuel J. Nettles, plaintiff, was duly substituted trustee under both of said deeds, instead of Isaac D. Wilson (with Wilson's consent); that James McCown had paid over none of the moneys received by him to Mrs. DeLorme's trustee, Isaac D. Wilson, or to plaintiff, though plaintiff had often called on him and required him so to do, and prayed an account and decree for their payment.

The original bill was filed 12th December, 1867, and taken *pro confesso* against James McCown, 28th January, 1868. No answer was filed to the original bill or to the bill of revivor, and the statements of the bill were not controverted.

It did not appear, in the pleading or evidence, that Wilson had ever appropriated sufficient of the funds arising from the interest of Mrs. DeLorme in the negro property of her grandfather, referred to in the bill, to replace the value of the slave sold, as stated.

A Referee was appointed to state the accounts of James McCown, and report the amount of Mrs. DeLorme's interest in his hands.

At the reference it appeared that Mrs. DeLorme's interest in the amount received by James McCown, as administrator of Robert Nettles, in March, 1860, was $442.20. A paper was submitted in evidence, by defendant, of which the following is a copy, viz.:

"Mr. James McCown, administrator of estate Robert Nettles:

"Take notice, that Col. I. D. Wilson has an assignment of the interest of John DeLorme and Adeline O. DeLorme in the funds now in your hands.

"6th March, 1860.                              "J. A. DARGAN,
                                        "Attorney for I. D. Wilson."

It did not appear, at the hearing, that this notice had ever been waived or withdrawn.

It appeared that when Mr. McCown received the money, as administrator, he deposited it in the agency of Georgetown Bank, at Darlington Court House, and paid out the same to the other distributees as they called for their shares; paid all, except Mrs. De-Lorme, in March, April and May, 1860; that her share remained on deposit till 1863, when, there being some talk, by Mrs. De-Lorme's father, of arranging the papers so that McCown could pay over said share, and of going to his house for the purpose, Mr. Mc-Cown drew it out, but did not pay it when her father went down, "as no one was present who was authorized to receipt for the money," and never returned it to the bank. He used some of the money, which was in bills of South Carolina banks, convertible into specie when deposited; and about $200 in bank bills, which the witness supposed to be of the sum deposited, remained on hand when Mr. McCown died, the last of the year 1868. Joseph J. McCown, son and agent of the administratrix, sold the bills remaining at twenty-seven cents on the dollar in 1870.

It did not appear in the pleading or evidence that Mr. McCown ever gave notice to Mrs. DeLorme or her trustee of the deposit, or of his readiness to pay her share; nor did it appear that Mrs. De-Lorme claimed adversely to Wilson, her trustee.

Demand was made on James McCown by Samuel J. Nettles, trustee, for Mrs. DeLorme's money in the spring of 1867. The parties all lived in Darlington County up to the death of Mr. Mc-Cown.

The Referee held, as matter of fact, that the deposit by Mr. McCown was special, and that there did not appear to have been any steps taken by which he could pay Mrs. DeLorme's portion until 1863; that $200 in the bills first deposited by McCown remained on hand at his death, which were sold at twenty-seven cents on the dollar.

As matter of law, that, the money being held on deposit by Mc-Cown, he was not liable for interest on it until formal demand was made, which was not until the filing of the bill, 12th December, 1867; that the loss of the money deposited was the loss of the trustee, or *cestui que trust*, not of McCown; and that the amount due by McCown was $242.20 plus $54, the amount for which the bills on hand sold, making $296.20, with interest from 12th December, 1867, to date of report, October 13th, 1871, amounting to $375.24.

To this report exceptions were filed by plaintiff, bringing the questions before the Court as to the liability of Mr. McCown for the whole fund belonging to Mrs. DeLorme in his hands, and for interest thereon.

After argument His Honor decreed as follows:

"This case was heard on exceptions to the report of M. A. Huggins, Esq., the Referee appointed by the Court. James McCown was the administrator of Robert Nettles, one of whose distributees, in the events that have occurred, is Adeline O., wife of John F. DeLorme. About the first of March, 1860, McCown, as administrator, received the fund, to which, under proceedings in equity, his intestate was entitled. He made a deposit of the entire fund at the time he received it with the agent of the Bank of Georgetown, at Darlington Court House. Out of that fund, in March and April of that year, he paid the full shares of all those entitled to participate, except the share of Mrs. DeLorme.

"In January, 1855, John F. DeLorme executed a deed to Isaac D. Wilson, as trustee, conveying to him certain negro property. Thereafter DeLorme and wife sold one of the negroes covered by the said deed, and to replace the value thereof, in February, 1860, they executed another deed to Wilson, conveying their interest in certain negroes, the possession of which was then sought by bill in equity. A recovery was had in this last case; the negroes were sold, and McCown came into possession of the fund already alluded to."

A notice was served on McCown in these words, to wit:

[Here follows a copy of the notice signed by J. A. Dargan, attorney for I. D. Wilson.]

"The share of Mrs. DeLorme in those funds was $442.20.

"On the 4th day of August, 1866, the plaintiff was substituted, by order of Court, trustee, instead of I. D. Wilson, and in December, 1867, filed his bill against McCown, calling on him to account for the share of Mrs. DeLorme, to wit, the sum of $442.20, with interest.

"Before a hearing, McCown died intestate, and the plaintiff revived his bill against the defendant, as administratrix of McCown. So far as I can see and have heard, this fund, in McCown's hands, was not covered by the first deed above mentioned. How, then, can the substituted trustee be entitled to claim it?

" The Referee reports that McCown received the whole fund in bills of specie paying banks; that these bills remained with the bank agent till the year 1863, (counsel agreed till July 1st, 1863,) when he withdrew them, in order to pay or turn them over on some arrangement which Mrs. DeLorme's step-father was to make, but he failed to give Mr. McCown a proper voucher. About that time McCown used $242.20 of the money; that $200 of them were found intact at his death. That, after his death, Joseph J. McCown, agent of the administratrix of James McCown, sold these $200 in bills at 27 cents on the dollar.

" The Referee held, as law, that McCown was not liable for interest until formal demand was made; that this was made December 12th, 1867, when the bill was filed against him; that the loss of the fund must be the loss of Mrs. DeLorme or her trustee; that the amount due by McCown was $242.20 and $54, the sums used by him, and the product of $200 in bills, sold by Joseph J. McCown, with interest from December 12th, 1867.

" I can find no sufficient error as to facts, on the part of the Referee, as to warrant my interposition, and, therefore, overrule the exceptions, so far as the facts are involved.

" As to the law, I think the loss must fall on the trust estate. The trustee, I conceive, acted faithfully. Wilson was alone entitled to Mrs. DeLorme's share, either as her trustee or her assignee, and he is not before the Court. It was his act that locked up the fund, kept it idle, caused the delay and subsequent depreciation in value; let her, or her present trustee, look to him.

" Counsel for the defendant insists that the estate of McCown should not be forced to pay the sum of $54, brought by the sale of the $200 in bank bills by the administratrix, after her intestate's death. If I could lay my hands on those bills, and found them in the possession of any one affected by the trust, I would order them to be specifically delivered up; but, as it is, I cannot hold the estate liable for the *devastavit* of the administratrix.

" I am in doubt whether the plaintiff has any right to an account; but as counsel knows more than I do as to the matter, and do not object, I adjudge that the estate of James McCown is due to the plaintiff, as trustee, the sum of two hundred and forty-two 20-100 dollars, with interest from the 1st July, 1863—this latter date having been fixed by consent of both counsel. In all other respects the report is confirmed.

" October 24th, 1871."

(The consent referred to by the Judge was as to the time the money was drawn from deposit.)

We consent to the foregoing as a correct statement of the case.

[Signed by counsel for plaintiff and defendant, and dated September 11, 1872.]

The plaintiff appealed on the following grounds:

1. Because it appears, by the evidence, that steps *were* taken by which Mr. McCown could have paid over Mrs. DeLorme's portion of the estate of Robert Nettles in March 1860, and the finding of the fact that no steps were taken contains an error in law.

2. Because the deposit of the money by Mr McCown was at his own risk, and retaining it in hand his own laches, and he is liable, as administrator, for the whole amount, with interest, from March, 1860; and the Judge erred in holding otherwise.

3. Because, if $200 of the money first deposited by Mr. McCown, remained on hand at his death, and (as erroneously held) belonged to the trust estate, it was error to hold that the sale of the bank bills, found in the possession of the deceased, by the administratrix, was a *devastavit*. If a *devastavit*, she, being the defendant, could take no advantage of it.

4. Because, in other respects, the judgment of His Honor is contrary to the law and the evidence of the case.

*Edwards*, for appellants:

The only steps necessary to be taken, by which Mr. McCown could pay Mrs. DeLorme's money, were taken.—*Chesnut* vs. *Strong*, 2 Hill Ch., 150; *McAlister* vs. *Brice*, McM. Eq., 275; *Duncan* vs. *Dent*, 5 Rich. Eq., 7.

The fund was not locked up by Wilson, nor the loss occasioned by him; it was unnecessarily held by McCown at his own risk, and he is liable for the whole amount, with interest from March, 1860.— *Darrell* vs. *Eden*, 3 DeS. Eq., 241; *Lafont* vs. *Ricard*, Bail. Eq., 487; *Howard* vs. *Schmidt*, Rich. Eq. Cas., 452; *McAlister* vs. *Brice*, McM. Eq., 275; *Duncan* vs. *Dent*, 5 Rich. Eq., 7; *Frierson* vs. *Graham*, 7 Rich. Eq., 95; 2 Williams on Ex'rs. Amer. note to page 1567, (D) Merrick's Est., and page 1568.

If $200 of the money deposited remained on hand at McCown's death, and belonged to the trust estate, the trustee can recover its value in this action and interest.

*McIver & Boyd*, contra:

1st. It does not appear that the fund in question is covered by the deeds under which the plaintiff holds his trusteeship, and until this is made to appear the plaintiff cannot maintain this action.

2d. If the action be maintainable at all, it should have been brought against Wilson, the original trustee, for it was by his default, and by his act, that the fund was not paid over when the other distributées of Robert Nettles received their shares.

3d. At all events Wilson should be made a party before any decree can be made in this action, he holding an assignment of the fund in question.

4th. The defendant in this action is not the representative of the estate of Robert Nettles, and is not liable for interest until demand, except for so much as was actually used by James McCown.—*Davis* vs. *Wright*, 2 Hill, 560; *Mouk* vs. *Pinckney*, 9 Rich. Eq., 291.

5th. The rule in reference to interest is this: "If a fund in the hands of an executor be claimed by two or more persons, and he holds it in his hands without using it, or making interest upon it, until they have legally settled their rights, he is a mere stakeholder, and not liable for interest.—*Oswald* vs. *Givens*, Rich. Eq. Cas., 350; *Bulows & Pope* vs. *O'Neall*, 4 DeS. Eq., 394; *Pace* vs. *Burton*, 1 McC. Ch., 247; Notes to *Selleck* vs. *French*, 1 Am. Lead. Cas., 3d Ed., 510–514–16; *Fitzsimmons* vs. *Fitzsimmons*, 1 S. C., 412.

6th. If James McCown, as administrator, had the right to retain the fund in his hands, he having made a *special* deposit of it, the money deposited became the property of the party for whom it was deposited, and for the sale of that portion of it which remained, the $200 in bank bills, the estate of James McCown cannot be made liable, but the plaintiff must look to the party who sold it.—*City Council* vs. *Duncan*, 3 Brev., 386; *Morton* vs. *Smith*, 1 DeS. Eq., 123; *Fitzsimmons* vs. *Fitzsimmons*, 1 S. C., 412.

Sep. 13, 1873. The opinion of the Court was delivered by

WRIGHT, A. J. It is not so certain that if the plaintiff, Samuel J. Nettles, was substituted only as trustee under the deed of 2d January, 1855, he could not properly maintain the bill. The purpose of the deed of 28th February, 1860, was to protect the trust created by the first, so far as it provided means to repair the loss occasioned by the act of the *cestui que trust*, in selling one of the slaves which passed under it, and, after appropriating therefor a sufficient sum for such purpose, to hold the remainder, subject to

the same trusts which were established by the first deed, to which it appears to have been only subsidiary. Nettles, by virtue of his substitution as trustee under the first, might well require that the second should be applied to the object proposed by it. It is not necessary, however, to consider that question, for the original bill and bill of revivor both allege the fact that Nettles was substituted as trustee under the two deeds, and both bills were taken *pro confesso.* Besides this, it is admitted in the brief, with the signature of counsel, that it "is a correct statement of the case," and this allegation of the bill forms part of it.

Strict pleading would require that Wilson should have been a party. No objection to this omission was made by demurrer or otherwise, although, in the argument here, it was alleged that to his default the non-payment of the demand now claimed is attributable. If the interest of the respondent required it, she should have taken the proper course to have made him a party, and cannot now complain of what she could so easily have remedied. We do not see any ground upon which she can maintain her defense. Her intestate received a fund of which the *cestui que trust,* Adeline O. DeLorme, was a distributee. There is no dispute of the fact that he so knew, for it is claimed, as a bar to his liability, that he retained, until 1863, her share of the bank bills, which he had received on the recovery, on behalf of his intestate, Robert Nettles ; and added to this, he had notice on 6th March, 1860, shortly after the fund came to his hands, that Wilson held an assignment of her share. He therefore had the ready means of ascertaining which of the parties he was bound to pay ; indeed, no adversary rights existed, or were set up between them.

The Circuit decree, while it admits that his estate is liable for the $242.20, the amount of the bills used by the intestate, relieves him of all responsibility as to the remaining $200, on the ground that the sale of them by his administratrix was a *devastavit* by her, for which his estate is not liable. It is enough to say that the liability of the intestate arose as early as March, 1860, when, having the funds belonging to this distributee, he failed to pay them over. Her right to receive did not depend on any demand to be made by her or on her behalf. All he could require was an acquittance, and this it was in the power of Wilson to give. If the deed of assignment was void, or inoperative, he could have had a full discharge by the receipt of herself and husband.

We fail to discover any difference between the admitted liability of the intestate for the $242.20 used by him, and the bills of the State Bank for $200, afterwards converted by the administratrix into National currency, at 27 cents on the dollar. If they had been retained and tendered, still the plaintiff was not bound to accept them in their depreciated character.

His claim is not for the identical bills so converted, but for the amount due the distributee from the estate of Nettles, in the hands of McCown, his administrator, whose use of them, or a portion of them, for his own individual purpose, is inconsistent with the idea _that they were specially retained and held as the property of the distributee.

We can see nothing in the case which can exclude the application of the general rule as to interest in regard to administrators. Even if the claims of the plaintiff and Wilson had been conflicting, it was the duty of the intestate to invest the fund, so that it could be productive until the proper right of ownership was established.

In *Duncan et al.* vs. *Dent*, 5 Rich. Eq., 7, it was held that "an administrator keeping funds after the payment of debts in his hands without profit will not be excused from the payment of interest merely because various persons claim the estate in different rights, and suits have been instituted."

It is a misconception to suppose (as is alleged under the fourth head of the argument of the respondent) that, as administratrix of McCown, she is not liable for interest on the money not actually used by him until demanded, as she is not the representative of the estate of Robert Nettles, from which the fund was derived. Though " an administrator of a deceased administrator does not represent the estate on which his intestate administered, and is not bound to make interest on any fund of that estate in the hands of his intestate at his death," as was held in *Davis, Adm'r.*, vs. *Wright, Adm'r.*, 2 Hill, 563, the facts do not support the application of the rule to the case in hand.

When McCown received the fund as administrator of Nettles, he held for his creditors and distributees.

It is conceded that a specific sum was in his hands for the distributee, Mrs. DeLorme, for which he was liable to her, or those who represented her in regard to it. As the administrator of Nettles, he held it for her use, and unless he can excuse himself for

the non-payment of it by some more adequate reason than he has presented, he must he held bound for the interest. The decree of the Circuit Judge must be modified, and the defendant, as adminis- ·tratrix of McCown, is held liable to pay the plaintiff, as trustee, the sum of $442.20, with interest from 6th March, 1860.

This might dispose of the whole case, but it appears from the decree that an account is asked. It is, therefore, remanded to the Circuit Court.

*Moses,* C. J., and *Willard,* A. J., concurred.